IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PATRICK EDWARD DUPREE, SR.,

    Plaintiff,                              No. CIV S-06-0971 DAD

    v.

MICHAEL J. ASTRUE,                   <u>ORDER</u>
Commissioner of Social Security,[1]

    Defendant.
_____/

        This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment or remand and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security (Commissioner) is reversed, and the matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

        On June 23, 2003, plaintiff applied for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (Act). (Transcript (Tr.) at 57-69.) The Commissioner denied plaintiff's application initially and on reconsideration. (Tr. at 38-52.)

---

[1] Michael J. Astrue has been substituted for Jo Anne B. Barnhart as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

Plaintiff filed an untimely request for hearing before an administrative law judge (ALJ) but good cause for late filing was found. (Tr. at 18, 53-56.) At the administrative hearing conducted on July 8, 2005, plaintiff represented himself. (Tr. at 375-84.) Additional medical records were received by the ALJ after the hearing. (Tr. at 3-4, 355-69.) In a decision issued on November 15, 2005, ALJ Antonio Acevedo-Torres determined that plaintiff is not disabled. (Tr. at 18-31.) The ALJ entered the following findings:

> 1. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b). The record supports a finding that the claimant has severe impairments due to back pain without acute radiculopathy, is status post surgery L4-5; degenerative disc disease of the cervical spine and a history of hepatitis C, with findings of stage II fibrosis.
>
> 2. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 3. I find the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 4. I have carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 416.927).
>
> 5. The claimant has the retained residual functional capacity to perform a full range of light work on a sustained basis, which includes the ability to sit for at least six hours in an eight hour period, stand and walk only two hours total, with regular break opportunities, and the ability to lift no more than ten pounds frequently and twenty pounds occasionally. (Social Security Ruling 83-10). He does not have a severe mental impairment.
>
> 6. The claimant is unable to perform his past relevant work (20 CFR § 416.965).
>
> 7. The claimant has the residual functional capacity to perform a full range of light work on a sustained basis. (20 CFR 416.967).

        8.     The claimant is 49 years of age, which is defined as an individual a younger individual [sic]. He has a limited education. (20 CFR § 416.963).

        9.     In light of the claimant's residual functional capacity, age, education and work experience, section 416.969 of Regulations and Rule 202.17 of Table No. 2 of Appendix 2, Subpart P, Regulations No. 4, provided that the claimant is not disabed [sic] because a significant numbers [sic] of jobs exist that he can perform.

       10.    The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(g)).

(Tr. at 30.)

On December 6, 2005, plaintiff's present counsel requested review of the ALJ's decision and an extension of time to submit an additional medical opinion. (Tr. at 12-14.) The request for extension of time was granted, and plaintiff submitted additional evidence. (Tr. at 10-11, 370-74.) On April 1, 2006, the Appeals Council considered plaintiff's additional evidence but gave the additional medical opinion from one of plaintiff's treating physicians no weight and denied plaintiff's request for review. (Tr. at 6-9.) Plaintiff then sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on May 3, 2006.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under the Social Security regulations. Title 20 of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is conclusively presumed disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The

Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff asserts that the ALJ failed to consider the diagnoses and opinions of treating physicians with respect to plaintiff's mental and physical impairments as well as with respect to the limitations resulting from his severe impairments. Plaintiff contends that, if those diagnoses and opinions had been properly considered, the ALJ would not have decided that plaintiff has no severe mental impairments and would not have determined that plaintiff retains the capacity to perform light work despite his severe physical impairments.

It is well established that at step two of the sequential evaluation process the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). A medically determinable impairment or combination of impairments is considered severe if it significantly limits an individual's physical or mental ability to do basic work activities. 20 C.F.R.§§ 404.1520(c) and 416.920(c). The purpose of step two of the sequential evaluation is merely to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Yuckert, 482 U.S. at 153. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" Smolen, 80 F.3d at 1290 (citations omitted). See also 20 C.F.R. §§ 404.1521(a) and 416.921(a).

The weight to be given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester, 81 F.3d at 830. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Id. This is so because a treating doctor has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d

1273, 1285 (9th Cir. 1996). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Lester, 81 F.3d at 830 (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). The ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

"Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester, 81 F.3d at 830 (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). If a treating professional's opinion is contradicted by an examining professional's opinion that is supported by different, independent clinical findings, the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751). The opinion of a non-examining professional, without other evidence, is an insufficient basis for rejecting the opinion of either a treating or examining professional. Lester, 81 F.3d at 831.

Here, the ALJ found that plaintiff "has severe impairments due to back pain without acute radiculopathy, is status post surgery L4-5; degenerative disc disease of the cervical spine and a history of hepatitis C, with findings of stage II fibrosis." (Tr. at 30.) The ALJ expressly found that plaintiff "does not have a severe mental impairment." (Id.) Plaintiff contends that the record contains substantial evidence of severe mental impairments due to mood disorder and depression with psychotic features, as well as additional physical impairments due to chest pain, asthma, and chronic obstructive pulmonary disease (COPD).

The record reflects that plaintiff was seen repeatedly by treating physicians Linda Aranaydo, M.D., and Patricia Samuelson, M.D., at Sacramento Urban Indian Health Project, Inc. from 2001 through 2004. (Tr. 160-287, 371-72, 380.) The treatment records document that plaintiff has suffered from asthma and COPD for many years. (See Tr. at 169, 172, 174-79, 182, 187, 189-91, 194, 197, 201, 203, 218, 223, 228 & 233.) In her Medical Assessment of Ability to

Do Work-Related Activities (Physical) dated July 9, 2003, Dr. Aranaydo indicates that environmental restrictions are necessary due to plaintiff's asthma and COPD. (Tr. at 176.) Citing bilateral wheezes on auscultation, Dr. Aranaydo notes that both impairments may be exacerbated by temperature extremes, chemicals, dust, and fumes. (Id.) The opinion of Dr. Aranaydo and the diagnoses of Drs. Aranaydo and Samuelson are supported by other treating and examining physicians, including Terrence Smith, M.D., who diagnosed plaintiff as suffering from asthma on December 26, 2002, Daniel Vanhamersveld, M.D., whose diagnosis on February 14, 2003, included asthma, and Liana Turkot, M.D., who diagnosed plaintiff's asthma and COPD conditions on September 18, 2003, and indicated environmental restrictions based on those impairments. (Tr. at 157, 205 & 292.) At the administrative hearing on July 8, 2005, plaintiff testified that his asthma had gotten worse and that he was taking medication for it. (Tr. at 380, 383.) The medical records also document plaintiff's complaints of chest pain as well as extensive efforts by medical staff to diagnose the cause of that pain, but the record does not demonstrate that plaintiff suffers additional work restrictions related to his complaints of chest pain. (See Tr. at 141, 157, 183, 189, 194 & 203.)

The undersigned finds that the medical records demonstrate that plaintiff's COPD and asthma comprise more than slight abnormalities. The ALJ erroneously gave no evidentiary weight to the opinions of treating and examining physicians who recognized that these conditions have more than a minimal effect on plaintiff's ability to work. Thus, the ALJ erred at step two of the sequential evaluation by failing to recognize plaintiff's COPD and asthma as severe impairments. While the evidence related to these impairments may or may not ultimately lead to a finding of disability, it was clear error to omit them at step two.

With regard to plaintiff's mental impairments, the ALJ relied on the opinion of Michael Joyce, M.D., who performed a psychiatric examination of plaintiff on February 25, 2004. (Tr. at 318-23.) Dr. Joyce noted current medication with anti-depressants to control anger as well as nine or ten psychiatric hospitalizations, but he dismissed the history of psychiatric

hospitalizations on the ground that "it sounds like most of these were drug related." (Tr. at 319.) Based on his 29-minute examination, Dr. Joyce found no evidence for a mood, thought, or anxiety disorder and noted that plaintiff's history of antisocial behavior did not appear to be "active" at the time of the examination. (Tr. at 322.) Dr. Joyce observed no significant limitations on plaintiff's functional capacity and reiterated that it "sounds like his previous psychiatric contacts have mostly come in the setting of polysubstance abuse, most notably the alternating abuse of stimulants and depressants." (Tr. at 323.)

Dr. Samuelson, who had treated plaintiff at Sacramento Urban Indian Health Project, Inc. between 2001 and 2004, saw plaintiff at Mercy Norwood Clinic throughout 2005. (Tr. at 356-59.) In March 2005, plaintiff reported moodiness, severe irritability, trouble controlling his temper, and anger out of proportion to the provocation. (Tr. at 358.) Dr. Samuelson observed restlessness, found evidence of uncontrolled and sociopathic behavior, noted that plaintiff has criminality, and prescribed Zyprexa. (Id.) In July 2005, plaintiff admitted that he has visual and auditory hallucinations, and expressed concern that his mood remained difficult, although his girlfriend said he "was 'not as paranoid.'" (Tr. at 357.) Dr. Samuelson observed that "[h]is behavior mostly appears to revolve around anger, irritability and sociopathy." (Id.) She diagnosed depression with psychotic features, continued the Zyprexa and prescribed Prozac and Depakote for mood stabilization. (Id.) In August 2005, plaintiff reported that his mood had not improved appreciably. (Tr. at 356.) Dr. Samuelson diagnosed mood disorder and increased his Depakote dosage. (Id.) The medical records confirm a long history of depression and previous treatment with psychiatric medications. (See tr. at 137-38, 254, 268, 278, 301 & 309.) When plaintiff consulted Frank S. Reynolds, M.D., in 2003 with respect to interferon-based therapy for his hepatitis C, Dr. Reynolds described plaintiff's depression as "out of control." (Tr. at 138.) At the administrative hearing in July 2005, plaintiff testified that he was still taking medication for depression. (Tr. at 380.)

/////

In his decision dated November 15, 2005, the ALJ acknowledged that plaintiff had previously received SSI benefits on the basis of an antisocial personality disorder that limited him to jobs not requiring frequent interaction with the public. The ALJ found, however, that "new evidence," apparently referring to Dr. Joyce's opinion, "suggests that the claimant's mental condition has improved since the prior decision and is not as severe as it was in the past, in that the record as a whole reflects that he does not have a severe mental impairment." (Tr. at 23.) The ALJ found "[n]o substantiation . . . of limitation in the claimant's mental ability to engage in basic work-related activity." (Tr. at 26.) The ALJ asserted that there was "no report of any longitudinal history of mental illness" and discounted the treating physicians' prescription of psychotropic medications for moodiness, irritability, and anger problems because "there is no indication that mental status testing was performed, or that [plaintiff] was referred to a psychologist or psychiatrist." (Id.) The ALJ characterized Dr. Joyce's report as (1) finding no evidence that plaintiff's antisocial behavior was active, (2) "conclud[ing] that the claimant's previous psychiatric contacts related to the claimant's polysubstance abuse," and (3) reflecting plaintiff's own opinion that "he had some improvement in his symptoms, in that he was 'not as mad.'" (Id.) The ALJ asserted that Dr. Joyce "found no evidence for a primary mood, thought or anxiety disorder" and concluded that, as long as plaintiff remains sober and medication-compliant, he can respond appropriately to supervision, coworkers, and the usual work situation, including changes in a routine setting. (Tr. at 26-27.)

> [G]iven the lack of any objective medical evidence, psychiatric diagnosis, and treatment history, the undersigned finds that the claimant does not have a medically determinable mental impairment or impairments which significantly limit his ability to perform basis work-related activities; therefore, the claimant does not have a severe mental impairment.

(Tr. at 27.)

On December 23, 2005, after the ALJ had issued his decision, plaintiff was seen by Dr. Samuelson once again. (Tr. at 372.) On that date Dr. Samuelson completed a form

9

"Medical Source Statement - Mental" in which she opined that plaintiff suffers from a mood disorder that causes poor ability to work without supervision, poor ability to interact with the public, coworkers or supervisors, and poor ability to adapt to changes in the workplace. (Tr. at 371-72.)  Although the ALJ did not have the benefit of Dr. Samuelson's opinion, the statement was presented to and considered by the Appeals Council. (Tr. at 6-7, 9, 370-74.)  The Appeals Council conceded that Dr. Samuelson's opinion "describe[s] limitations greater than those found by the Administrative Law Judge" but concluded that the opinion "do[es] not contain any objective findings, narrative explanation, or other information in support of those limitations" and gave the opinion no weight.  (Tr. at 7.)

The undersigned finds that the Appeals Council erroneously gave no evidentiary weight to the treatment records and opinion of a physician who had treated plaintiff for five years and based her opinion on years of observation, treatment, and medical records.  See Lester, 81 F.3d at 830.  Contrary to the Appeals Council's assessment, Dr. Samuelson's opinion was supported by her written comments on the form itself and the medical records of her treatment of plaintiff at Mercy Norwood Clinic throughout 2005.  The latter records had been submitted to the ALJ prior to his decision, were part of the record, and contradicted the ALJ's conclusion that plaintiff's mental condition had improved and was not as severe as it was in the past.  (Tr. at 3 (indicating that the records at pages 355-59 were received subsequent to hearing).)

The opinion of Dr. Samuelson, as a treating physician, should have been given more weight than the opinion of Dr. Joyce, who examined plaintiff once.  See Lester, 81 F.3d at 830.  If Dr. Samuelson's opinion was contradicted by Dr. Joyce's opinion, the Commissioner was required to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Samuelson's opinion.  Id.  However, Dr. Joyce's examination and opinion preceded Dr. Samuelson's by 22 months and was not supported by different, independent clinical findings that contradicted Dr. Samuelson's observations, treatment, and opinions in 2005.  The court finds that Dr. Samuelson's uncontradicted opinion demonstrates that plaintiff

suffers from mental impairments that comprise more than a slight abnormality and have more than a minimal effect on his ability to work.  Thus, the ALJ also erred at step two of the sequential evaluation in failing to find that plaintiff has severe mental impairments.  While the evidence related to these impairments may or may not ultimately lead to a finding of disability, it was clear error to omit them at step two.

In reaching these conclusions regarding the Commissioner's multiple errors at step two of the sequential evaluation, the court is particularly mindful that the step-two inquiry is but "a de minimis screening device to dispose of groundless claims."  Smolen, 80 F.3d at 1290 (citing Yuckert, 482 U.S. at 153-54).  See also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001).  Remand is required so that an ALJ can proceed beyond step two of the sequential evaluation process with respect to all of plaintiff's severe impairments, both physical and mental.

## CONCLUSION

In light of the remand required by the ALJ's error at step two, the court will not address plaintiff's argument that the ALJ erred in his assessment of the severity of the limitations on plaintiff's residual functional capacity.  See Sanchez v. Apfel, 85 F. Supp. 2d 986, 993 n.10 (C.D. Cal. 2000) (having concluded that remand is appropriate because the ALJ erred at step two, the court need not consider issues of credibility).  On remand, an ALJ will necessarily be required to re-determine plaintiff's residual functional capacity in light of all his impairments and the entire record and to re-consider whether plaintiff is capable of performing any work in the national economy.  In doing so, proper weight must be given to the opinions of treating and examining physicians.

If the sequential evaluation proceeds to step five, the ALJ may well be required to question a vocational expert in a manner that properly takes into account all of plaintiff's limitations on his abilities to engage in various work-related functions.  See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001) (explaining that testimony from a vocational expert was necessary because the claimant suffered from a severe mental impairment).  In that

regard, the ALJ will have to consider whether the grids will "accurately and completely describe the claimant's abilities and limitations," taking into account the limitations imposed by all of plaintiff's physical and mental impairments. Burkhart, 856 F.2d at 1340. See also Reddick, 157 F.3d 715, 729 (9th Cir. 1998).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is granted;

2. Defendant's cross-motion for summary judgment is denied; and

3. The decision of the Commissioner of Social Security is reversed, and this case is remanded for rehearing consistent with the analysis set forth herein. See 42 U.S.C. § 405(g), Sentence Four.

DATED: October 9, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/dupree0971.order